IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| QINGHUA ZHANG and STEVEN CRAIG HEILAND,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>FEDERAL HOME LOAN BANK OF TOPEKA,<br><br>　　Defendant, | Case No. 19-4073-SAC-ADM |

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiffs' Renewed Motion to Amend. (ECF No. 60.) Plaintiffs Qinghua Zhang and Steven Craig Heiland allege discriminatory termination and retaliation in violation of Title VII of the Civil Rights Act of 1964, and they now seek leave to amend to assert a Kansas common law retaliatory discharge claim for whistleblowing. Their proposed Second Amended Complaint alleges, highly summarized, that their former employer, which is a banking institution, reported inaccurate financial information in violation of federal statutory and regulatory requirements, plaintiffs reported some of these errors and problems in culling the data, and the bank terminated their employment because of the reporting. Defendant Federal Home Loan Bank of Topeka ("FHLBank Topeka") opposes the motion on the grounds that plaintiffs' proposed retaliatory discharge claim is futile because the Second Amended Complaint does not plead facts sufficient to show that FHLBank Topeka engaged in activities in violation of rules, regulations, or the law pertaining to the public health, safety, and general welfare. But plaintiffs' proposed Second Amended Complaint pleads the federal acts and regulatory guidance that they contend FHLBank Topeka violated. And, in the absence of direct

authority to the contrary, plaintiffs are not required to plead the claim with more specificity. Accordingly, the court grants plaintiffs' motion because the amendment is not futile.

## I. BACKGROUND

Plaintiffs filed this employment discrimination suit against their former employer, FHLBank Topeka. Plaintiffs allege discriminatory termination and retaliation in violation of Title VII. They previously moved to amend to assert a Kansas common law claim for retaliatory discharge for whistleblowing. (ECF No. 53.) FHLBank Topeka opposed the motion on multiple grounds, including futility of the amendment. The court agreed on the record that was at that time before the court because plaintiffs had not alleged sufficient facts to state a claim. But the court could not foreclose the possibility that they could potentially to do so, so the court extended the deadline for plaintiffs to file a renewed motion to amend to April 23, 2020. (ECF No. 57.)

Plaintiffs' proposed Second Amended Complaint now pleads additional factual allegations in support of their retaliatory discharge claim for whistleblowing. (ECF No. 60, at 1-4 (listing new factual allegations).) According to the proposed pleading, Mr. Zhang and Mr. Heiland both served as managers in FHLBank Topeka's market risk analysis ("MRA") department and were responsible for helping the bank to ensure that its market risk and market value were properly measured through certain interest-rate models. In these positions, they also produced key financial information that was subject to public disclosure to the Securities and Exchange Commission ("SEC") pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"). Mr. Zhang and Mr. Heiland contend they identified risk or financial information that FHLBank Topeka submitted to the Federal Housing Finance Agency ("FHFA") and the SEC that was not properly measured and reported. They also contend that FHLBank Topeka's external accounting firm, external consultants, an internal auditors had all challenged financial results submitted by the MRA department. Mr. Zhang and Mr. Heiland allege they reported the findings of inaccuracies in good

faith to their supervisor, Michael Surface, and also to Mark Yardley, FHLBank Topeka's president and CEO.

According to plaintiffs, in many instances, FHLBank Topeka senior officers declined to address these reported inaccuracies. Specifically, Mr. Zhang and Mr. Heiland contend that interest rate caps had over a $15 million valuation variance until Mr. Zhang and Mr. Heiland fixed the modeling issue. In another instance, the value-at-risk number for the risk-based capital requirement calculations reported to the FHFA were significantly inaccurate until Mr. Zhang and Mr. Heiland discovered "a bug" in the vendor's model. Plaintiffs allege the bank violated the law by failing to report the incident to the FHFA. On November 29, 2018, Mr. Zhang reported to representatives from FHLBank Topeka's human resources and legal departments that he previously challenged Mr. Surface's problematic method in pricing certain financial instruments inaccurately and in violation of the law. According to plaintiffs, the challenged problematic method impacted FHLBank Topeka's financial statements and disclosures through SEC reporting until FHLBank Topeka corrected the method. Plaintiffs also allege that they challenged Mr. Surface on January 9, 2019, about a flaw in modeling activities of callable bonds in FHFA-regulated stress testing. According to plaintiffs, FHLBank Topeka ultimately reported the inaccurate stress-testing results and disclosed them to the public.

Plaintiffs also allege that on March 1, 2019, four days before FHLBank Topeka terminated Mr. Zhang's employment, plaintiffs challenged Mr. Surface about problems with the PolyPaths income simulation, a process to help monitor FHLBank Topeka's interest rate and impact on forecasted income. Plaintiffs contend this violated FHFA regulations and advisory bulletins involving interest risk modeling/management and should have triggered required FHFA operational-risk event and fraud-reporting requirements. According to plaintiffs, Mr. Zhang had

previously reported the event to FHLBank Topeka's model risk management team on December 12, 2018.

Mr. Heiland contends that he separately reported to Mr. Surface and the MRA department on April 11, 2019, the existence of a recurring quarterly issue resulting in an inaccurate valuation of FHLBank Topeka's substantial mortgage investment portfolio. Plaintiffs allege the incident involved an $18 million overvaluation of quarterly new mortgage loan purchases totaling $480 million.

According to plaintiffs, FHLBank Topeka senior management, HR, and legal departments were aware of Mr. Zhang's and Mr. Heiland's reports at the time FHLBank Topeka took adverse employment actions against them and that FHLBank Topeka terminated their employment because of the reporting. They further allege that FHLBank Topeka's conduct was unlawful, resulting in violations of the Federal Housing Enterprises Financial Safety Act of 2002, FHFA regulations, and SOX.

## II.     LEGAL STANDARD

Once a party has filed a responsive pleading, the opposing party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice requires. FED. R. CIV. P. 15(a)(2). The rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (internal quotations omitted). The court may refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).

Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted. *See Wilkerson*, 606 F.3d at 1267 (in the absence of such a showing, amendment should be allowed); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (stating the party opposing amendment bears the burden to show undue prejudice and that there is a presumption in favor of amendment absent such a showing "or a strong showing of the remaining *Forman* factors"). Whether to grant a motion to amend is within the court's sound discretion. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

In this case, FHLBank Topeka opposes the amendment on the ground of futility. "A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In the context of futility, the court often considers whether the amended complaint could withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases); *see also Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 199 (5th Cir. 2017) (stating the court uses the 12(b)(6) standard when evaluating futility). To withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing whether dismissal is appropriate, the court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

### III. ANALYSIS

To state a claim for retaliatory discharge for whistleblowing under Kansas law, the plaintiff must allege facts sufficient to show: (1) a reasonable person would have concluded that the

employer or a coworker "engaged in activities in violation of rules, regulations or the law pertaining to public health, safety, and the general welfare"; (2) the employer knew of the plaintiff's good-faith reporting of the violations; and (3) the employer terminated plaintiff's employment in retaliation for reporting the violations. *Goodman v. Wesley Med. Ctr., LLC*, 78 P.3d 817, 821 (Kan. 2003); *see also Palmer v. Brown*, 752 P.2d 685, 689 (Kan. 1988) (first recognizing the tort). FHLBank Topeka argues plaintiffs' proposed claim fails because plaintiffs do not allege facts sufficient to show that the bank engaged in activities that violated well-established rules, regulations, or laws pertaining to public health, safety, and the general welfare. FHLBank Topeka contends that plaintiffs' citations to SOX, the Safety and Soundness Act, and certain FHFA advisory bulletins is insufficient to specifically identify what provision of those laws the bank allegedly violated, and that nonspecific citations to entire acts should not satisfy plaintiffs' pleading burden. FHLBank Topeka further contends that plaintiffs have failed to explain how the bank's disputed activities specifically violated the laws plaintiffs cite and that, in some instances, plaintiffs' allegations are confusing because the alleged errors were reported to the FHFA and disclosed to the public. FHLBank also argues that it would be illogical to believe that the bank terminated plaintiffs for reporting their conclusions or opinions about the bank's market risk—a job they were hired to do.

Much of the case law FHLBank Topeka relies on concerns whether an employer's alleged acts rise to the level of a violation pertaining to public health, safety, and the general welfare. But none of these decisions involve the particular statutes and regulatory guidance plaintiffs allege the bank violated in this case. *See, e.g., Meier v. Shawnee Mission Med. Ctr., Inc.*, No. 18-CV-2368-JWL, 2018 WL 6000549, at *3 (D. Kan. Nov. 15, 2018) (granting motion to dismiss because plaintiff failed to allege she reported an EMTALA violation and the hospital's alleged inability to provide adequate care because of staffing shortages was not an EMTALA violation); *Balfour v.*

*Medicalodges, Inc.*, No. CIVA 05-2086 KHV, 2006 WL 3760410, at *15 (D. Kan. Dec. 19, 2006) (finding a retaliatory discharge claim for whistleblowing could be based on a Kansas regulation setting a baseline nursing staffing requirement but plaintiff's opinions about inadequate staffing were insufficient for the claim to survive summary judgment); *Conrad v. Bd. of Johnson Cty. Comm'rs*, 237 F. Supp. 2d 1204, 1263 (D. Kan. 2002) (finding on summary judgment that the Kansas Nurse Practice Act and its regulations did not confer any rights to plaintiff—in contrast to a whistleblowing claim based on an employee's exercise of her own statutory rights—and also that Kansas would not recognize a cause of action relating to an employee's exercise of her own rights and performance responsibilities under the Act); *Graham v. Philips Lighting C.*, No. 95-4016-RDR, 1996 WL 134859, at *4 (D. Kan. Mar. 13, 1996) (concluding a supervisor's actions in throwing lamps when only one other employee was in the area and was not in harm's way was insufficient for a retaliatory discharge claim to withstand summary judgment); *Herman v. W. Fin. Corp.*, 254 Kan. 870, 881, 869 P.2d 696, 704 (1994) (affirming that a violation of a bank's *internal* underwriting policies and guidelines was not a violation of a rule, regulation, or law pertaining to public health, safety, or the general welfare).  And none of these cases reach the issue of pleading requirements at the amendments stage.

The one case to evaluate in the issue in the context of a motion to dismiss is distinguishable in that the court's reasoning largely turned on the plaintiff's failure to plead (1) that she reported the violation of the applicable law, and (2) that defendant's actions actually constituted a violation of the applicable law.  *See Meier*, 2018 WL 6000549, at *3.  In contrast, in this case FHLBank Topeka does not contend that a bank's inaccurate reporting in violation of federal law could not be actionable or that plaintiffs failed to report the alleged violations.  Rather, here, FHLBank argues that plaintiffs proposed pleading is not sufficiently specific in identifying what exact provision of those Acts and regulatory guidance they contend the bank violated or how the bank

7

violated those specific provisions. But FHLBank Topeka does not point to any authority suggesting that plaintiffs are required to plead the alleged violations with that degree of specificity. The crux of plaintiffs' allegations is that FHLBank Topeka violated various federal reporting requirements[1] by reporting inaccurate information it was legally required to report; that plaintiffs reported these incidents in good faith to their supervisor and to the bank's upper management; and that FHLBank Topeka terminated their employment as a result. These allegations, which include citations to the Acts themselves and regulatory guidance, give FHLBank Topeka fair notice of plaintiffs' claim and the grounds on which it rests. FHLBank Topeka's arguments seeking more a more specific identification of the law plaintiffs allege the bank violated can be clarified through discovery. *See* FED. R. CIV. P. 8(a)(2) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."); *May v. Rottinghaus Co., Inc.*, 394 F. Supp. 3d 1334, 1339 (D. Kan. 2019) (ruling on a motion for a more definite statement and noting that "[w]hen a complaint provides sufficient notice under Rule 8(a), the defendant should elicit additional detail through the discovery process").

---

[1] In a footnote, FHLBank Topeka contends that, even if SOX applies, the Act itself provides an adequate statutory remedy for whistleblowing. In support, FHLBank Topeka relies on a Kansas Supreme Court case that addresses whether a plaintiff could pursue both a statutory whistleblower claim and a common-law whistleblower retaliatory discharge claim. *See Prager v. State, Dep't of Revenue*, 20 P.3d 39, 70 (2001). But that case did not involve a SOX whistleblower claim. Instead, the court generally applied the alternative remedies doctrine—deciding whether a state or federal statute would be substituted for a state retaliation claim if the substituted statute provides an adequate remedy." *Id.* At this procedural juncture, FHLBank Topeka provides only a conclusory assertion that SOX provides an adequate remedy. This is insufficient to establish that plaintiffs' whistleblower retaliatory discharge claim based on an alleged SOX violation is precluded under *Prager*.

FHLBank Topeka also argues that it would be "illogical" for the bank to have terminated plaintiffs' employment for essentially doing what the bank hired them to do or that a reasonably prudent person reading plaintiff's allegations would not believe that defendants violated the law. But this argument goes toward the weight of the evidence and credibility determinations, which are more appropriately considered at trial, not on a motion to amend the pleadings. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000).

Accordingly, the court grants plaintiffs' motion to amend because the court cannot say that the proposed retaliatory discharge claim for whistleblowing would be futile under Kansas law. *See W & W Steel, LLC v. BSC Steel, Inc.*, No. 11-2613-RDR, 2012 WL 1828928, at *2 (D. Kan. May 18, 2012) ("In order to deny a motion to amend on the basis of futility, the court requires more than a possibility that the claim would not survive a motion to dismiss; it must be established that the claim would be dismissed.").

**IT IS THEREFORE ORDERED** that Plaintiff's Renewed Motion to Amend (ECF No. 60) is granted. Plaintiffs shall file their Second Amended Complaint as a separate docket entry within two business days of the date of this order.

**IT IS SO ORDERED.**

Dated May 7, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
